# PRACTICE REPORTS.

ELIZA ANN LONGENDYCK and CATHERINE VAN ORDER agt.
CHARLES ANDERSON.

*Right of way — when it exists by grant cannot be lost by non-user nor surrendered by verbal declarations or loose conversations — when by prescription — Action.*

In an action brought to prevent an interference by the defendant with the plaintiffs' alleged right to use a road or way across the premises of the defendant, and to compel the defendant to remove obstructions placed by him upon said way to prevent its use by the plaintiffs :

*Held,* that, as plaintiffs' damages by reason of being deprived of the use of the way would be difficult of estimation in dollars and cents, and as the claimed right to its use by the one party and its denial by the other will be productive of many actions, unless settled by this suit, upon these two well-understood grounds of equitable relief, as well as that of the affirmative relief sought, that the defendant be compelled to remove a cause of continuing injury, the action is maintainable, provided the plaintiffs are entitled to use the road as they insist that they are.

*Held,* that the plaintiffs have a right of way across the defendant's premises, because: *First.* When the deeds from Frederic Schmidt to the grantors of both parties were given on April 11, 1774, there was a road upon the ground crossing their premises. That road, thus established and used was an appurtenant to the property conveyed by Frederic Schmidt and passed to the grantees therein under the clause which conveys " ways, passages, easements," &c., &c., to the premises belonging " or in any wise appertaining, or therewith used, held, occupied or enjoyed, or reputed, deemed or esteemed as part, parcel or member thereof;" and even without this clause, the right to use the way would have passed as an appurtenant to the property conveyed.

*Second.* The reservation of a right of way to Spawn and Berger was an easement in their favor. The fee of the land of the road was conveyed. to the grantors of the parties to this action. Each parcel bore half of the burden of the road, and if it was located more on one than on the

other, compensation was made in land. This arrangement and location gives to them a joint right of use as tenants in common of the property, a right exercised by both for a period of more than fifty years, and which use is highly important, not only to show that the construction given by the court to the deed was identical with that given to it by the parties from the earliest recollections of living witnesses, but also to establish a way by use.

*Third.* The right of way would also pass as an appurtenant to the property conveyed to the grantors of both parties, not only because it was a way established by grants made to Spawn and Berger, and to Paulus Schmidt in 1762, but also because the conveyances to the grantors of the parties to this suit located a road upon the ground the burden of which the properties equally sustain.

Where a right of way exists in favor of plaintiffs by grant, such right cannot be lost by mere non-user. Nor could it be surrendered by verbal declarations and loose conversations, for an interest in land created by deed cannot thus be extinguished.

Where the evidence showed the use of a road or way for a period of more than fifty years, the defendant and his grantors during that period having used the way where it passes over plaintiffs' land, and the plaintiffs and their grantors have used it over the lands of the defendant *for an equal period :*

*Held,* that mere words of defendant would not amount to acts interrupting the use, and thus used it became a way by prescription.

*Greene Circuit, December,* 1878.

TRIAL by the court without a jury.

*J. I. Werner* and *J. A. Griswold,* for plaintiffs.

*Mr. Halleck* and *R. E. Andrews,* for defendant.

WESTBROOK, *J.* — The action is brought to prevent an interference by the defendant with the plaintiffs' alleged right to use a road or way across the premises of the defendant, and to compel the defendant to remove obstructions placed by him upon said way to prevent its use by the plaintiffs.

As the plaintiffs' damages by reason of being deprived of the use of the way would be difficult of estimation in dollars and cents, and as the claimed right to its use by the one party

and its denial by the other will be productive of many actions, unless settled by this suit, upon these two well-understood grounds of equitable relief, as well as that of the affirmative relief sought, that the defendant be compelled to remove a cause of continuing injury, this action is maintainable, provided the plaintiffs are entitled to use the road as they insist that they are.

The lands of both parties are situate in the town of Catskill, Greene county, and are, as is apparent from the conveyances put in evidence, and the recitals in them contained, a part of premises which formerly belonged to a Mrs. Jannetie Hageman, and which whole track, when owned by her, extended from Hudson's river upon the east, to the Westbergh on the west, a distance of about two and a-half miles.

Mrs. Hageman, on October 18, 1759, conveyed the property to her two sons, Dennis Hageman and Jacobus Hageman, who, on December 29, 1760, divided the same equally between them. These facts are evidenced, not only by recitals in the deed from Jacobus Hageman to Spawn and Berger, dated June 12, 1762, but, also, so far as is material for the purposes of the case, by those in the deed from Frederick Schmidt and wife to Johannis Sax and wife, dated April 11, 1774, and also by those in the deed from Frederick Schmidt and wife to Nicholas Trumpbour and wife, likewise dated April 11, 1774, the recitals in which last-mentioned deeds are evidence in this action.

Jacobus Hageman conveyed the part which fell to him in the division with his brother Dennis, to Philip Spawn and Johannis Berger, by deed dated June 12, 1762, which deed was produced in evidence.

Dennis Hageman conveyed his half to Paulus Schmidt on the same day that his brother conveyed to Spawn and Berger. This deed was not produced, but this fact appears from the recitals in the deed from Frederick Schmid and wife to the grantors of plaintiff, and also in that to the grantors of defendant.

The conveyance of Jacobus to Spawn and Berger was of land upon the river and upon the Kalchbergh, and a right of way was reserved across it unto Paulus Schmidt, his heirs and assigns, from said Schmidt's land to the river, and a right of way was conveyed to Spawn and Berger, their heirs and assigns across Schmidt's lands to the lot upon the Kalchbergh.

The conveyance from Dennis Hageman to Paulus Schmidt, which is not produced, but which also conveyed lands on the river and at the Kalchbergh, must have contained a similar reservation for the benefit of Spawn and Berger, and a similar grant to enable Schmid to cross those of Spawn and Berger. This is apparent not only from the location of the premises of both grantees (Paulus Schmidt, and Spawn and Berger), which, as both owned lands on Hudson's river and at the Kalchbergh, made a road for each across the other necessary, and as both deeds (that from Jacobus to Spawn and Berger, and that from Dennis to Paulus Schmidt) bore date on the same day, the improbability, in view of equal necessity to each, that a road should be given to the one and not to the other, but also from the facts, that whilst the deed to Spawn and Berger expressly reserves a way for Paulus Schmidt across the premises conveyed to the former, it also conveys a right of way to Spawn and Berger across the lands of said Schmidt, which right to and in Spawn and Berger, Frederick Schmidt, the son of Paulus, expressly recognizes and concedes, by the reservation in their favor contained in both the deeds given by him under which the parties to this action hold.

As early then as June 12, 1762, a way or road was provided for extending from the Kalchbergh, on the west, to Hudson's river, on the east, and crossing the lands now owned by the plaintiffs and the defendant. Such way, as previously remarked, was an actual necessity both to Spawn and Berger and to Paulus Schmidt, the father of Frederick. From the antiquity of the transaction it is impossible to say whether or not such road was permanently located prior to April 11, 1774, on which day, by two separate deeds, Frederick Schmidt,

the son of Paulus Schmidt, conveyed to Johannis Sax and Margaret, his wife, the southern half or moiety of the Paulus Schmidt purchase, and to Nicholas Trumpbour and Elizabeth, his wife, the northern half or moiety, " the whole," as both deeds declare, " into two equal parts to be divided." The plaintiffs claim under Sax and the defendants under Trumpbour.

By these deeds the grantors in each also obtained land at the Kalchbergh and lands and privileges at and upon Hudson's river. In each was granted a right of way to cross lands not conveyed, to enable them to reach the river, an express grant of " ways, passages, easements, profits, advantages, commodities, rights and appurtenances whatsoever, to the said moieties of the three several lots and premises hereby granted and released, belonging or in anywise appertaining or therewith used, held, occupied or enjoyed, or reputed, deemed or esteemed as part, parcel or member thereof ; " and also a clause providing as follows : "Always saving and reserving a road for Philip Spawn and Johannis Berger, their respective heirs and assigns, from the landing place at Green Island to the Kalchbergh, and if one-half of the road cannot be conveniently laid on the northern moiety or half part, and the other half on the southern moiety or half part, in that case the parties holding said part are to allow land in compensation to the party who shall have the greater part of the road, so much as is above the one-half, so that it may always be understood, and it is the intent and meaning of these presents that each half lot shall bear half the road, or allow land in compensation for the same."

As already stated the deeds from Schmidt bear date in 1774. When they were given, as has also been previously mentioned, a right of way had been granted to Spawn and Berger, across the premises now owned by the parties to this suit, and another to their (plaintiffs' and defendant's) source of title, Paulus Schmid over that of Spawn and Berger, so that there was either an actual, continuous way upon the ground, or one to be so constructed, extending from Hudson's river to the

Kalchbergh. The conveyances from Schmid, on 11th of April, 1774, located that road across the premises of the parties to this action, and placed it one-half on the lands of the plaintiffs and one-half on lands of defendant, wherever the make of the ground would allow, and if more land was taken from one moiety than the other, then the party giving the greater quantity of land for the road was to be compensated by land taken from the other, so, to use the language of the two conveyances, "that each lot shall bear half the road."

As early as 1828, or 1829, there was a road, in fact, upon the ground extending from Hudson's river to the Kalchbergh. Where it crosses the lands of the parties to this action it runs generally upon the line between them. It sometimes is entirely on the land of the plaintiffs, and sometimes wholly on the land of the defendant. According to the evidence of Robert Hood, the engineer who surveyed and mapped it, "taking its whole length across the lands of parties, the road takes about as much land from one as it does from the other." At the point where the dispute has arisen the road is wholly upon the land of the defendant, and it had to be located there by reason of a ledge of rocks. This road has been used by both parties, and their predecessors, more or less, down to the present time; the defendant and his grantors passing over that part which is on plaintiff's lands, and the plaintiffs and their grantors over that which is on defendants.

From the facts which have been thus fully stated, it seems to be clear that the plaintiffs have a right of way across the defendant's premises, because :

First. When the deeds from Frederick Schmidt to the grantors of both parties were given on April 11, 1774, there was a road upon the ground crossing their premises from the river to the Kalchbergh. The expression "was" is used, because the deeds to Spawn and Berger and to Paulus Schmid provide for one, and that, in equity, is done which must be done, or which parties have agreed should be done. That road thus established and used, as it must have been by both

Spawn and Berger and Paulus Schmidt, to pass from the river to the Kalchbergh, was an appurtenant to the property conveyed by Frederick Schmidt, and passed to the grantees therein under the clause which conveys " ways, passages, easements," &c., &c., to the premises belonging " or in anywise appertaining or therewith used, held, occupied or enjoyed, or reputed, deemed or esteemed as part, parcel or member thereof ; " and even without this clause, the right to use the way would have passed as an appurtenant to the property conveyed (*Huttemeier* agt. *Albro*, 18 *N. Y.*, 48 ; *Lansing* agt. *Wiswall*, 5 *Denio*, 213). It is true that the reservation in words is for the benefit of Spawn and Berger only, but Schmidt, as the owner of the land, had also the right to use it, and as that part of the road which was on his (Schmid's) land joined on that which crossed Spawn and Berger's premises, to use which he had the right, and as thereby a continuous road was made, it is apparent that the whole way was used, as it was clearly intended to be, as an appurtenance, and therefore passed by Frederick Schmid's conveyances.

Second. The reservation of a right of way to Spawn and Berger was an easement in their favor. The fee of the land of the road was conveyed to the grantors of the parties to this action Each parcel bore half of the burden of the road, and if it was located more on one than on the other, compensation was made in land. It is hardly worth while to argue the proposition, that where a road is laid upon the line of lands of A and B for the benefit of C, the owners of the adjacent properties, each furnishing one-half of the road, could use such road as owners in common thereof. And what is true as to the rights of such owners in the supposed case, is also true of those of the parties to this action. The road is taken from the land of each just as much so as if it was so located that the division line between their lands was the center of the road, for the excess of land taken from the one for the road, if there be any, has been compensated for in land taken from the other. This arrangement and location

gives to them a joint right of use as tenants in common of the property, a right exercised by both for a period of more than fifty years, and which use is highly important, not only to show that the construction given by the court to the deed was identical with that given to it by the parties from the earliest recollections of living witnesses, but also to establish a way by use.

Third. The right of way would also pass as an appurtenant to the property conveyed to the grantors of both parties, not only because it was a way established by grants made to Spawn and Berger and to Paulus Schmidt in 1762 as stated in proposition one, but also because the conveyances to the grantors of the parties to this suit locate a road upon the ground the burden of which the properties equally sustained. That, in equity, as before stated, which *must* be done *is* done. Would it be seriously argued, that if a road on the line of the two properties, and taken one-half from each, had existed when Frederick Schmid conveyed to the predecessor of these parties, that each would not have the right to its use under the clause which grants the use not only of all ways "appertaining" to the property, but of all "used, held, occupied or enjoyed, or reputed, deemed or esteemed as part and parcel, or member thereof?" The concession, which must be made in answer to the question necessarily concedes the case. In equity, and this is an equitable action, the deeds must be construed as if that had been done which the deeds provide for. We are to assume that the road, which the deeds order, was laid. It is to be regarded as one taken from both properties equally, and so located as to be of the greatest convenience to both. Not only was it a convenience, but the location of the properties shows it was a necessity to both. It is true that to Spawn and Berger was reserved the right to use it, but such right is not declared to be exclusive, on the contrary to the grantees in the deeds, in which such reservation was made, was given the fee of the land, each sustaining half the burden of the road, and then, as if placing its fee in both

Longendyck agt. Anderson.

was not sufficient to secure its joint use, and in order to free the case from all question and doubt, each deed provides for the use by the grantee therein named of all roads, ways and easements, in language so full and copious that nothing can be added. If, when the deeds are to be read as if the way which they provide for was constructed at the time of their execution, and so they must be read under the well-known equitable maxim referred to, a right of way does not pass to the grantees of each deed, their heirs, and assigns, then language is powerless to express thought.

Having reached the conclusion that a right of way exists in favor of the plaintiffs by grant, it is scarcely necessary to pursue the discussion of other questions. It is sufficient to say that such right could not be lost by mere non-user (*Jewett* agt. *Jewett*, 16 *Barbour*, 150, 157; *White* agt. *Crawford*, 10 *Massachusetts*, 183; *Arnold* agt. *Stevens*, 24 *Pickering*, 106; *Smyles* agt. *Hastings*, 22 *N. Y.*, 217, 224; *Pope* agt. *O'Harra*, 48 *N. Y.*, 446, 452). Neither could it be surrendered by verbal declarations and loose conversations, for an interest in land created by deed cannot thus be extinguished.

The attempt will not be made to discuss fully the question of a way by user. The evidence shows such use for a period of more than fifty years. The defendant and his grantors, during that period, have used the way where it passes over plaintiffs' lands, and the plaintiffs and their grantors have used it over the lands of the defendant for an equal period. Mere words of defendant would not amount to acts interrupting the use (*Miller* agt. *Garlock*, 8 *Barbour*, 153; *Robinson* agt. *Phillips*, 56 *N. Y.*, 634). Thus used it became a way by prescription.

The result of my examination is that plaintiffs are entitled to judgment as asked for in the complaint.